UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| BOARD OF CURATORS OF <br> LINCOLN UNIVERSITY, | ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | |
| v. | ) <br> ) | Case No. 2:19-cv-4125 |
| 62nd & 65th REGIMENTS LEGACY <br> FOUNDATION, INC., <br> f/k/a Lincoln University Foundation, Inc. | ) <br> ) <br> ) <br> ) | |
| Defendant. | ) | |

## COMPLAINT

This is the Complaint of Plaintiff Board of Curators of Lincoln University (the University) against Defendant 62nd & 65th Regiments Legacy Foundation, Inc., f/k/a Lincoln University Foundation, Inc. (the Foundation).

### Subject Matter Jurisdiction

1. The University asserts a claim that the Foundation has violated § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Accordingly, the Court has subject matter jurisdiction under 28 U.S.C. § 1331 and § 1338(a). Under 28 U.S.C. § 1367(a), the Court has supplemental jurisdiction over the University's state law claims against the Foundation because the University's state law claims are so related to the University's federal law claim that the University's state law claims form part of the same case or controversy under Article III of the United States Constitution.

## General Allegations

**A.  Lincoln University.**

2. The University is a Missouri state university organized under Chapter 175 of the Missouri Revised Statutes. The University is located in Jefferson City, Missouri.

3. The University is governed by its Board of Curators. Mo. Rev. Stat. § 175.020. The Board of Curators has the same powers, authority, and responsibilities as the Board of Curators of the University of Missouri. Mo. Rev. Stat. § 175.040.

4. Mo. Rev. Stat. § 172.020 sets forth the powers, authority, and responsibilities of the Board of Curators of the University of Missouri and, thus, the Board of Curators of Lincoln University.

5. Under § 172.020, the Board of Curators of Lincoln University has the "power to sue and be sued, complain and defend in all courts."

**B.  The University's fundraising activities.**

6. Under § 172.020, the Board of Curators of Lincoln University "may act as trustee in all cases in which there be a gift of property or property left by will to the university or for its benefit or for the benefit of students of the university."

7. For several decades, the University, like most universities, has regularly sought funds from various private sources (e.g., private donations, bequests, grants, and fundraising events) to supplement its primary revenue sources (e.g., state appropriations, federal grants, and tuition).

### C. The University's name, symbols, logos, and marks.

8. In connection with its services and fundraising activities, the University has used: (a) its name ("Lincoln University" or "Lincoln University of Missouri"); and (b) various symbols, logos, and marks that it has developed, including, but not limited to (i) the nickname "Blue Tigers," (ii) various logos consisting of a blue tiger, columns, the letters "LU," and/or the word "Lincoln," and (iii) various seals. A sample of these symbols, logos, marks, and seals is attached as Exhibit 1.

9. The University has ownership or rights in its name, symbols, logos, and marks. The University's name, symbols, logos, and marks are inherently distinctive or, alternatively, have secondary meaning in that the public identifies and has come to associate the University's name, symbols, and marks with the University' services and fundraising activities.

### D. The University's establishment of the Foundation to assist in fundraising activities.

10. In 1970, to assist the University in its fundraising activities, the University established the Foundation and authorized it to raise funds on the University's behalf and hold all such funds in trust for the University's benefit.

11. The University's President and other administrators at the time incorporated the Foundation and served as its initial board of directors. *See* Ex. 2, Foundation's Original Articles of Incorporation.

12. The Foundation is a nonprofit corporation incorporated under The Missouri Nonprofit Corporation Law.

13. The Foundation's headquarters are in Jefferson City, Missouri.

14. As reflected in the auditor's reports for the University and the Foundation, the Foundation has been a component unit of the University.

15. As stated in the Foundation's articles of incorporation, as amended, the purpose of the Foundation is "the support of … Lincoln University, and to that end to encourage, solicit, receive and administer gifts and bequests of property and to hold in trust any property real and personal given, devised, bequeathed, given in trust or in any other way made over to [the Foundation] for the use or benefit of Lincoln University…." Ex. 3, ¶ 5.

16. Pursuant to an implied license, the University authorized the Foundation to use the University's name, symbols, logos, and marks in the Foundation's fundraising activities and other operations.

17. From the inception of the Foundation in 1970 until March 22, 2019, the University handled the Foundation's fundraising activities and other operations.

18. Before, during, and since its affiliation with the Foundation, the University has engaged in its own fundraising activities and has solicited or obtained donations, gifts, or bequests that have been made directly to the University. The University has placed some of these funds with the Foundation to be held in trust for the University and invested by the Foundation.

### E. The memoranda of understanding between the University and the Foundation.

19. From time to time, the relationship between the University and the Foundation has been memorialized in various memoranda of understanding.

20. In 2000, the University and the Foundation entered into a Memorandum of Understanding (the 2000 MOU) to memorialize their relationship. A copy of the 2000 MOU is attached as Exhibit 4.

21. The 2000 MOU stated:

> ***Pursuant to this MOU, the Foundation and the Curators recognize the Foundation as an entity of the University and its Curators. The Foundation exists for the sole purpose of supporting the University*** in its role as an institution of higher learning in the State of Missouri. The Curators have determined that the execution of the MOU will: (1) clarify the purpose for existence of the Foundation, (2) be beneficial to the University in discharging its obligations in furtherance of its purpose and mission, and (3) will facilitate the Foundation in encouraging, soliciting, receiving and administering gifts and bequests of property ***for the benefit of the University***.
>
> The primary mission of the Foundation is to solicit and raise private funds ***in support of the University***. Further, the Foundation has a fiduciary responsibility to prudently manage any funds it raises ***on behalf of the University***. To this end, the MOU specifies the administrative support which the University will provide to the Foundation to assist in it fulfilling its responsibilities.
>
> During the time in which this MOU shall be in effect, the University will provide the following administrative support to the Foundation: [Physical Facilities, General Administrative, and Financial Administrative].

Ex. 4 (emphasis added).

22. In 2015, the University and the Foundation entered into an amended Memorandum of Understanding (the 2015 MOU). A copy of the 2015 MOU is attached as Exhibit 5.

23. The 2015 MOU was essentially identical to the 2000 MOU except that the sentence "Pursuant to this MOU, the Foundation and the Curators recognize the Foundation as an entity of the University and its Curators" in the 2000 MOU was changed to "Pursuant to this MOU, the Foundation and the Curators recognize that the Foundation is the primary external fundraising entity of the University and its Curators" in the 2015 MOU.

24. Like the 2000 MOU, the 2015 MOU provides: "This MOU shall remain in effect until such time as it is rescinded, terminated or otherwise made null and void by action of the Lincoln University Board of Curators or the Lincoln University Foundation." Ex. 5.

**F. The University's concerns with the Foundation's performance and assertion of autonomy from the University.**

25. In 2018, the University became concerned with the Foundation's performance in raising funds on the University's behalf and the Foundation's apparent belief that it could act autonomously of the University.

26. Although the University's President is a member of the Foundation's board, the Foundation was not providing the President with notices of the Foundation's board meetings and information concerning the Foundation's board meetings.

27. The Foundation asserted that it should have greater control over how the University spent unrestricted funds, thereby injecting the Foundation into the University's operations.

28. By letter dated November 16, 2018, the University advised the Foundation that, among other things, the University wanted the Foundation to: (a) grow its assets to an acceptable level; (b) reimburse the University for its expenses in providing administrative support for the Foundation (as required under the 2000 MOU and the 2015 MOU); (c) improve the process for transferring funds from the Foundation to the University; and (d) have its board members obtain appropriate training. A copy of this letter is attached as Exhibit 6.

29. The University requested a meeting with the Foundation to discuss the University's concerns and improve the parties' relationship.

30. On November 29, 2018, University administrators met with four members of the Foundation board.

31. The Foundation complained about giving "its" money to the University and acted as though the funds it held belonged to the Foundation instead of being held in trust by the Foundation for the University.

32. The Foundation also threatened to dissolve its relationship with the University.

### G. The University's termination of the Foundation Agreement and its new proposal to the Foundation.

33. After this unproductive meeting, on December 14, 2018, the University notified the Foundation by letter that the University intended to terminate the 2015 MOU effective December 31, 2018, but that the University was amenable to entering into a new memorandum of understanding with the Foundation. A copy of this letter is attached as Exhibit 7.

34. On January 17, 2019, the University submitted a new proposed memorandum of understanding to the Foundation.

35. Significantly, the University continued to provide administrative support to the Foundation, thereby signaling the University's desire to enter into a new memorandum of understanding with the Foundation.

### H. The Foundation's attempt to separate itself from the University.

36. Without any attempt by the Foundation to contact the University to discuss document provisions that the Foundation wanted to change, the Foundation rejected the University's proposal and submitted a new proposed memorandum of understanding to the University. A copy of the Foundation's proposal is attached as Exhibit 8.

37. Whereas the Foundation (which the University created) had "exist[ed] for the sole purpose of supporting the University" and had "a fiduciary responsibility to prudently manage any funds it raises on behalf of the University," Ex. 3, the Foundation sought through its proposal to separate itself from the University. Ex. 8.

38. Among other things, the Foundation wanted the University to agree that "the Foundation is a legal entity separate from the University," that "the Foundation is the primary external fundraising entity of the University," that "the Foundation exists and operates on behalf of the donor" instead of the University, and that the Foundation no longer owed a fiduciary responsibility to the University. Ex. 8.

39. In its proposal, the Foundation acknowledged the University's rights to the University's name, symbols, logos, and marks. Specifically, the Foundation proposed that "[t]he University authorizes the Foundation to use the name, symbols, and service marks of the University in seeking private gifts, grants, and in activities carried out for the benefit of the University" and that "[u]pon termination of the Foundation's relationship with the University, the Foundation shall be prohibited from using the name, symbols, or service marks of the University, and must transfer funds to another 501C3 by law." Ex. 8.

**I.    The University's termination of its affiliation with the Foundation and demand that the Foundation discontinue any use of the University's name, symbols, logos, and marks.**

40. The Foundation's proposal was unacceptable and alarming to the University.

41. On February 20, 2019, the University sent a letter notifying the Foundation that it was terminating all affiliation with the Foundation and that it was ceasing all administrative support of the Foundation effective March 22, 2019. A copy of this letter is attached as Exhibit 9.

42. In its February 20, 2019 letter, the University demanded that the Foundation immediately cease and desist all use of the University's name, symbols, logos, and marks. Ex. 9.

**J. The Foundation's continued use of the University's name, symbols, logos, and marks.**

43. Thereafter, the Foundation refused to honor the University's demand and continued to use the University's name, symbols, logos, and/or marks without any license, authority, or permission from the University.

44. On March 6, 2019, the Foundation filed with the Missouri Secretary of State amended articles of incorporation changing the Foundation's name from "Lincoln University Foundation, Inc." to "62nd & 65th Regiments Legacy Foundation, Inc."

45. However, the next day, March 7, 2019, the Foundation filed an application with the Missouri Secretary of State for registration of the fictitious name "Lincoln University Foundation." A copy of the Foundation's application is attached as Exhibit 10. In its application, the Foundation stated that it "is doing business under the [ ] name … Lincoln University Foundation." Ex. 10.

**K. The University's second notice to the Foundation concerning the Foundation's misuse of the University's name, symbols, logos, and marks and the Foundation's lack of authority to raise funds on the University's behalf.**

46. On June 17, 2019, the University sent another letter to the Foundation concerning the Foundation's misuse of the University's name, symbols, logos, and marks and the Foundation's lack of authority to raise funds on the University's behalf. A copy of this letter is attached as Exhibit 11.

47. In its June 17, 2019 letter, the University stated:

> To reiterate, the Foundation is no longer affiliated with, connected with, associated with, sponsored by, or approved by the University. The University has revoked the Foundation's authority to act on behalf of the University for any purpose, including, but not limited to, fundraising. While the Foundation, if contacted, may still encourage others to make donations, gifts, or bequests directly to the University, the Foundation is no longer authorized to receive or accept any new donations, gifts, or bequests intended for the use, benefit, or support of the University. In addition, the Foundation is no longer authorized to use the University's name, symbols, logos, or marks for any purpose and is not authorized to do business under the name "Lincoln University Foundation." The Foundation may use the University's name only: (a) to the extent necessary to administer the assets that the Foundation holds in trust for the use or benefit of the University; or (b) if contacted, for the purpose of encouraging others to make donations, gifts, or bequests directly to the University.

Ex. 11.

48. In its June 17, 2019 letter, the University further requested that by June 19, 2019, the Foundation acknowledge in writing that:

- The Foundation will not use the University's name, symbols, logos, or marks for any purpose, except that the Foundation may use the University's name only: (a) to the extent necessary to administer the assets that the Foundation holds in trust for the use or benefit of the University; or (b) if contacted, for the purpose of encouraging others to make donations, gifts, or bequests directly to the University.

- The Foundation will not do business under the name "Lincoln University Foundation."

- The Foundation has no authority to act on behalf of the University for any purpose.

- The Foundation is no longer affiliated with, connected with, associated with, sponsored by, or approved by the University.

- The Foundation will not receive or accept any new donations, gifts, or bequests intended for the use, benefit, or support of the University.

- The Foundation will not represent to anyone that it is authorized by the University to receive or accept any new donations, gifts, or bequests intended for the use, benefit, or support of the University.

- The Foundation will continue to hold all of its assets in trust for the use or benefit of the University, subject to the University's rights to the assets and any applicable agreements, laws, or government regulations.

Ex. 11.

49. To date, the Foundation has not acknowledged the foregoing. Instead, to date, the Foundation has:

   a. unlawfully continued to use the University's name, symbols, logos, and/or marks in the Foundation's fundraising activities and other operations;

   b. unlawfully continued to do business under the name "Lincoln University Foundation";

   c. unlawfully not withdrawn its application with the Missouri Secretary of State to register the fictitious name "Lincoln University Foundation";

   d. misrepresented to the public that the Foundation is affiliated with, connected with, associated with, sponsored by, and/or approved by the University;

   e. unlawfully received or accepted new donations, gifts, or bequests intended for the use, benefit, or support of the University; and

   a. misrepresented to the public that the Foundation is authorized by the University to receive or accept new donations, gifts, or bequests intended for the use, benefit, or support of the University.

50. In so acting, the Foundation has unlawfully competed with the University in fundraising.

51. The Foundation's unlawful acts have damaged the University's reputation and ability to raise funds and have damaged and diluted the University's name, symbols, logos, and marks.

52. Unless the Foundation is enjoined from continuing its unlawful acts, the University will suffer irreparable injury as the Foundation will further damage the University's reputation and ability to raise funds and further damage and dilute the University's name, symbols, logos, and marks.

### Count I – Violation of the Lanham Act

53. The University realleges the allegations of paragraphs 1 to 52.

54. Section 43(a) of the Lanham Act provides: "(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person… shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

55. In connection with its fundraising activities and other operations, the Foundation has used the University's name, symbols, logos, and marks, has made

misleading representations of fact, and has otherwise acted in a manner likely to cause confusion, to cause mistake, and/or to deceive as to: (a) the Foundation's affiliation, connection, and/or association with the University; and/or (b) the University's origin, sponsorship, or approval of the Foundation's fundraising activities and other operations.

56. The Foundation has thereby violated § 43(a) of the Lanham Act.

57. The University's has been damaged by the Foundation's violations of the Lanham Act and will suffer irreparable injury unless the Foundation is enjoined from further violations of the Lanham Act.

## Count II – Common Law Infringement

58. The University realleges the allegations of paragraphs 1 to 57.

59. The Foundation is liable for common law infringement under Missouri law.

60. Mo. Rev. Stat. § 417.061.1 provides: "Likelihood of injury to business reputation or of dilution of the distinctive quality of … a mark valid at common law, or a trade name valid at common law, shall be a ground for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services."

61. The Foundation's use of the University's name, symbols, logos, and marks creates a likelihood of injury to the University's business reputation and the dilution of the distinctive quality of the University's name, symbols, and marks.

62. Under § 417.061.1, the University is entitled to preliminary and permanent injunctive relief enjoining the Foundation from using the University's name, symbols, logos, and marks.

### Count III – Unfair Competition

63. The University realleges the allegations of paragraphs 1 to 62.

64. The Foundation has engaged in unfair competition with the University in violation of Missouri law.

### Count IV – Trademark Dilution

65. The University realleges the allegations of paragraphs 1 to 64.

66. The Foundation's use of the University's name, symbols, and marks have unlawfully created a likelihood of dilution of the distinctive quality of the University's name, symbols, logos, and marks in violation of Missouri law.

### Count V – Violation of Mo. Rev. Stat. § 417.150

67. The University realleges the allegations of paragraphs 1 to 66.

68. Mo. Rev. Stat. § 417.150 provides:

1. No person, society, association or corporation shall assume, adopt or use the name of a military, ex-military, patriotic, benevolent, humane, fraternal or charitable organization incorporated or organized under the laws of this or any other state or of the United States, or a name so nearly resembling the name of such incorporated organization as to be a colorable imitation thereof, or calculated to deceive any person with respect to such corporation.

2. In all cases where two or more such societies, associations, corporations or organizations claim the right to the same name or names substantially similar as above provided, the organization which was first organized and used the name and first became incorporated or organized under the laws of the United States or of any state in the union, shall be entitled in this state to the prior and exclusive use of such name, and the rights of such societies, associations, corporations or organizations and of their individual members shall be fixed and determined accordingly.

- 15 -

Case 2:19-cv-04125-BCW   Document 1   Filed 06/20/19   Page 15 of 20

69. The Foundation has used a name resembling the University's name in violation of § 417.150.

## Count VI – Violation of the Missouri Merchandising Practices Act

70. The University realleges the allegations of paragraphs 1 to 69.

71. Section 407.020.1 of the Missouri Merchandising Practices Act (MMPA) provides: "The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section 407.453, in or from the state of Missouri, is declared to be an unlawful practice."

72. The Foundation has violated § 407.020.1.

## Count VII – Breach of Trust

73. The University realleges the allegations of paragraphs 1 to 72.

74. The University was the beneficiary of a bequest by Viola M. Young (who was sometimes known as Viola M. Smith Young) pursuant to Section 3.B.(13) of the Viola M. Young Revocable Living Trust, entered into April 9, 1993. A copy of the Viola M. Young Revocable Living Trust is attached as Exhibit 12.

75. Pursuant to the Viola M. Young Revocable Living Trust, the trust estate was transferred and delivered to The Central Trust Bank (the Bank) for it to hold, manage, invest, and reinvest. The Bank was also the successor trustee to Ms. Young under the Viola M. Young Revocable Living Trust.

76. Upon the death of Ms. Young, after fulfilling Ms. Young's other bequests, the Bank distributed to the University the remainder of the trust estate, which included cash and a parcel of real estate. The real estate was later sold.

77. Per a memorandum dated May 30, 2001, a copy of which is attached as Exhibit 13, the University placed the proceeds from the sale of the real estate, along with the cash that the University received from the trust estate, with the Foundation, to be invested by the Foundation and held by the Foundation in the "Viola Smith Young Endowment" fund (the Fund).

78. This arrangement is also reflected in memoranda dated January 24, 2001, and September 26, 2000, which discuss the University's placement of the funds with the Foundation for investment purposes. A copy of these memoranda are attached as Exhibit 14.

79. The financial statements of the Foundation for the fiscal year ended June 30, 2018, list the balance of the Fund as $4,330,723.

80. By placing the funds in the Fund with the Foundation, the University, as settlor, created a revocable trust consisting of the Fund (the "Revocable Trust"), under which the Foundation is the trustee and the University is the sole beneficiary.

81. Under Mo. Rev. Stat. § 456.6-602.1, the Foundation owes duties exclusively to the University as settlor of the Revocable Trust.

82. Under Mo. Rev. Stat. § 456.6-602.4, upon the University's revocation of the Revocable Trust, the Foundation is required to deliver the trust property (the entire balance of the Fund) as the University directs.

83. On April 18, 2019, the University's Board of Curators voted to authorize the withdrawal of the entire balance of the Fund for deposit in a University bank account, thereby revoking the Revocable Trust.

84. On June 17, 2019, the University sent a letter to the Foundation requesting that as soon as possible, the Foundation transfer the entire balance of the Fund (including the corpus and all earnings) to the University's bank account. A copy of this letter is attached as Exhibit 15.

85. In this letter, the University asked that by June 19, 2019, the Foundation acknowledge in writing that it would honor the University's request. Ex. 15. The University further asked that the Foundation advise the University as to the current balance of the Fund and when the Foundation expected to transfer the balance of the Fund to the University (which the University understood might occur after June 19, 2019). Ex. 15.

86. To date, the Foundation has not acknowledged in writing that it will honor the University's request to transfer the entire balance of the Fund to the University's bank account, and the Foundation has not transferred the entire balance of the Fund to the University's bank account.

87. As a result, the Foundation is in breach of its duties as trustee of the Revocable Trust.

88. Pursuant to Mo. Rev. Stat. § 456.10-1001.2, the University is entitled to a judgment compelling the Foundation to transfer the entire balance of the Fund to the University.

**Request for Relief**

For relief on Counts I to VI, the University requests that the Court enter judgment in favor of the University and against the Foundation preliminarily and permanently enjoining the Foundation from:

    A.    using the University's name, symbols, logos, and marks in the Foundation's fundraising activities and other operations, except that the Foundation may use the University's name only: (a) to the extent necessary to administer the assets that the Foundation holds in trust for the use or benefit of the University; or (b) if contacted, for the purpose of encouraging others to make donations, gifts, or bequests directly to the University.

    B.    doing business under the name "Lincoln University Foundation" or any other name that includes the phrase "Lincoln University";

    C.    representing that the Foundation is affiliated with, connected with, associated with, sponsored by, or approved by the University in any manner;

    D.    receiving or accepting new donations, gifts, or bequests intended for the use, benefit, or support of the University; or

    E.    representing that the Foundation is authorized by the University to receive or accept new donations, gifts, or bequests intended for the use, benefit, or support of the University.

For relief on Count VII, the University requests that the Court enter judgment in favor of the University and against the Foundation compelling the Foundation to transfer the entire balance of the Fund to the University.

On all Counts, the University further requests that the Court enter judgment ordering the Foundation to pay for the University's attorney's fees, expenses, and costs and granting all other relief to which the University is entitled.

Respectfully submitted,

THOMPSON COBURN LLP


By /s/ William R. Bay
    Booker T. Shaw, MO – 25548
    William R. Bay, MO – 26977
    Jeffrey R. Fink, MO – 44963
    One US Bank Plaza
    St. Louis, Missouri  63101
    314-552-6000
    FAX 314-552-7000
    bshaw@thompsoncoburn.com
    wbay@thompsoncoburn.com
    jfink@thompsoncoburn.com

Attorneys for Plaintiff
Board of Curators of Lincoln University